UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
SECURITIES AND EXCHANGE
COMMISSION,                        :

               Plaintiff,       :       **MEMORANDUM & ORDER**

           -against-                :       11 Cv. 4642 (MHD)

JOSHUA CONSTANTIN et al.,          :

              Defendants.      :
----------------------------------x

**MICHAEL H. DOLINGER, U.S.M.J.:**

On April 2, 2013, we issued a Memorandum and Order granting summary judgment in favor of plaintiff and ordering supplemental briefing concerning the appropriate amounts of damages to be assessed against each defendant and relief defendant. (Memorandum & Order, Apr. 2, 2013 ("April 2, 2013 M&O") (docket no. 59)). Specifically, we left open the issue of the amounts of third-tier civil penalties to be imposed on each defendant and the amounts of ill-gotten gains to be disgorged by each defendant and relief defendant. (Id. at 52-56).

Our April 2, 2013 M&O directed plaintiff to file its supplemental submission by April 15, 2013, providing the court with "a clear explanation of the flow of funds from defrauded clients to each defendant and relief defendant… [and] an

explanation of its calculations of any prejudgment interest." (Id. at 55-56). We further set the deadline for defendants and relief defendants to file their opposition as April 18, 2013. The deadline for opposition has passed with no word from any of the defendants or relief defendants.

**Relevant Factual Background**

We incorporate the factual background set forth in our April 2, 2013 M&O. In addition, as outlined in the SEC's supplemental submission, we observe that defendants received approximately $1,272,644.00 in total ill-gotten gains from seven Windham clients. (See Pl. Supplemental Mem. in Supp. of Disgorgement & Pre-Judgment Interest Calculations ("Pl. Suppl. Mem.") 1-10). Of this amount, approximately $1,127,929.00 was placed in Windham's Leeward escrow account (id.), and then misappropriated for the benefit of the various defendants and relief defendants.[1]

Constantin transferred $450,000.00 from the escrow account to Leeward Company for the purchase of stock in the name of relief defendant DAC. (Id. at 7; Kamar Decl. (docket no. 52) Ex.

---

[1] The Leeward escrow account was funded exclusively by the seven defrauded investors. (Kamar Decl. Ex. 1 at 17-19).

2

3 at 54, Ex. 50 at 6, 11). Constantin also transferred a total of $645,000.00 from the escrow account to his company, relief defendant Constantin Resource. (Pl. Suppl. Mem. at 7-8; Kamar Decl. Ex. 50 at 6, 9, 11, 12). The remainder of the escrow funds were used to benefit Constantin himself, with $23,000.00 transferred from the escrow account directly to his personal checking account, and the remaining $9,928.00 used for purposes including cash withdrawals, wire transfer fees, and legal fees, all unrelated to the Leeward securities deal and for the benefit of Constantin and Windham. (Pl. Suppl. Mem. at 10; Kamar Decl. Ex. 50 at 6, 9, 11, 12, 20, 23, 29).

In addition to the client funds misappropriated through the Leeward escrow account, clients were charged a total of $135,000.00 in purported fees. (Pl. Suppl. Mem. 3-5; Kamar Decl. Ex. 43 at 1, Ex. 75 at 3). Of this, ultimately $40,000.00 was transferred to Constantin Resource (Pl. Suppl. Mem. 3; see Kamar Decl. Ex. 45 at 6, 26), $72,500.00 was transferred to defendant Solomon (Pl. Suppl. Mem. 3-4; Kamar Decl. Ex. 45 at 5, 6, 26), and $22,500.00 was transferred to Windham. (Pl. Suppl. Mem. 4-5; Kamar Decl. Ex. 52 at 18, 19).

Constantin transferred yet another $9,715.78 from the account of one client, Charles Balaban, directly to the Windham

checking account. (Pl. Suppl. Mem. 4; Kamar Decl. Ex. 52 at 26). He transferred approximately $42,000.00 of investor funds (originally passed through the Leeward escrow account) from Constantin Resource to Solomon. (Pl. Suppl. Mem. at 10; Kamar Decl. Ex. 45 at 13 20, 26, 33).

Of the total $1,272,644.00 in defendants' ill-gotten gains, $450,000.00 went to benefit relief defendant DAC (in the form of a stock purchase); $643,000.00 went to relief defendant Constantin Resource, in various forms; $65,145.00 went to defendants Constantin and Windham, collectively (from purported service fees and outright misappropriations); and $114,500.00 went to defendant Solomon (including commissions from Windham's clients Balaban and Mier, and $42,000.00 in additional investor funds received from Constantin Resource).

**Disgorgement**

"Where a party violates the federal securities laws, this Court has broad discretion not only to order the disgorgement of any ill-gotten gains, but also to determine the amount to be disgorged. This remedy is designed to deprive wrongdoers of any unjust enrichment and, in doing so, to deter others from engaging in similar conduct." SEC v. Universal Exp., Inc., 646

4

F. Supp. 2d 552, 562-63 (S.D.N.Y. 2009), aff'd, 438 F. App'x 23 (2d Cir. 2011) (internal cites omitted); accord SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1474-75 (2d Cir. 1996).

"The amount of disgorgement ordered 'need only be a reasonable approximation of profits causally connected to the violation,' [and] 'any risk of uncertainty [in calculating disgorgement] should fall on the wrongdoer whose illegal conduct created that uncertainty.'" Id. at 1475 (quoting SEC v. Patel, 61 F.3d 137, 139-40 (2d Cir. 1995)). Thus, while the SEC "bears the ultimate burden of persuasion that its disgorgement figure approximates the amount of unjust enrichment, once the SEC has made a reasonable demonstration of that amount, the burden shifts to the defendant to show that the proposal is not a reasonable approximation, by 'demonstrating that he received less than the full amount allegedly misappropriated and sought to be disgorged.'" SEC v. Inorganic Recycling Corp., 2002 WL 1968341, at *2 (S.D.N.Y. Aug. 23, 2002) (quoting SEC v. Benson, 657 F. Supp. 1122, 1133 (S.D.N.Y. 1987)).

We have reviewed the SEC's supplemental submission, as well as the supporting evidence, concerning defendants' and relief defendants' respective ill-gotten gains derived from defendants' unlawful conduct, and we find the SEC's calculations and

5

analysis concerning damages to be persuasive.[2] Given that defendants and relief defendants have failed to file any opposition to the SEC's supplemental submission, we have no cause to doubt the presumptive reasonableness of plaintiff's recommended disgorgement figures.

The SEC argues that "[t]he Court should hold Constantin and Windham jointly and severally liable… because Constantin owned Constantin Resource, owned Windham through Constantin Resource, and owned all of DAC's equity after DAC fraudulently obtained Leeward shares," that were purchased with misappropriated client funds. (Pl. Suppl. Mem. 12).

As the Second Circuit has observed, "where a firm has received gains through its unlawful conduct, [and] where its owner and chief executive officer has collaborated in that conduct and has profited from the violations… it is within the discretion of the court to determine that the owner-officer [] should be subject, on a joint and several basis, to the

---

[2] Indeed, we note that, although the SEC is "'not required to trace every dollar of proceedings... nor... required to identify misappropriated monies which have been commingled," SEC v. Anticevic, 2010 WL 3239421, at *5 (S.D.N.Y. Aug. 16, 2010) (quoting SEC v. Great Lakes Equities Co., 775 F. Supp. 211, 214 n.22 (E.D.Mich.1991), aff'd, 12 F.3d 214 (6th Cir. 1993)), at the court's request, the SEC has, in this case, ably demonstrated the trail of the majority of misappropriated client funds to each of the defendants and relief defendants.

6

disgorgement order." First Jersey Sec., 101 F.3d at 1475; see SEC v. AbsoluteFuture.com, 393 F.3d 94, 96 (2d Cir. 2004). In light of our prior findings concerning the close relationship between Windham, Constantin Resource, and Constantin (April 2, 2013 M&O 2, 3, 53), as well as the evidence suggesting that Constantin was the sole equity owner of DAC after DAC received the stock paid for by defendants' fraud (Kamar Decl. Ex. 95 at 11), we conclude that joint and several liability among all four of them is appropriate. Defendants Constantin and Windham are jointly and severally liable for the amount of $1,158,145.00 (constituting the full value of defendants' ill-gotten gains, less the $114,500.00 that went to Solomon). Relief defendant DAC is jointly and severally liable for $450,000.00 of the $1,158,145.00 amount that Constantin and Windham are liable to disgorge. Relief defendant Constantin Resource is jointly and severally liable for $643,000.00 of the $1,158,145.00 amount that Constantin and Windham are liable to disgorge. As for defendant Solomon, he is individually liable to disgorge $114,500.00.

## Civil Penalties

In our April 2, 2013 M&O, we set forth the standard for civil penalties under the securities fraud statutes as follows:

7

"Section 20(d) of the Securities Act and Section 21(d)(3)(B) of the Exchange Act outline three categories -- referred to as 'tiers' -- of civil penalties. Although each tier establishes a maximum penalty per violation, the amount of any civil penalty rests squarely in the discretion of the court." Universal Exp., Inc., 646 F. Supp. 2d at 567. The court may impose third-tier civil penalties for any violation of the Act involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" that "resulted in substantial losses or created a significant risk of substantial losses." 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d). With respect to natural persons, the court may impose a third-tier penalty of either $100,000.00 for each violation, or the gross amount of his or her pecuniary gain resulting from the violation, whichever is greater. With respect to non-natural persons, the court may impose a third-tier penalty of either $500,000.00 for each violation, or the gross amount of his or her pecuniary gain resulting from the violation, whichever is greater. 15 U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(B)(iii).

"In determining whether civil penalties should be imposed, and the amount of the fine, courts look to a number of factors, including (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." SEC v. Milligan, 436 F. App'x 1, 3 (2d Cir. 2011) (quoting SEC v. Haligiannis, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007)). "While these factors are helpful in characterizing a particular defendant's actions, the civil penalty framework is of a 'discretionary nature' and each case 'has its own particular facts and circumstances which determine the appropriate penalty to be imposed.'" Opulentica, LLC, 479 F. Supp. 2d [319,] 331 [(S.D.N.Y. 2007)] (quoting Moran, 944 F. Supp. at 296-97).

8

(April 2, 2013 M&O, 50-51). We then went on to conclude that, in light of defendants' pattern of fraudulent misconduct and the significant financial losses that they had caused their clients, each of the defendants should be subjected to third-tier civil penalties. (Id. at 51-52).

Given the sweeping nature of defendants' fraud, "[t]he exact number of violations committed by the Defendants is nearly impossible to determine." SEC v. Invest Better 2001, 2005 WL 2385452, at *5 (S.D.N.Y. May 4, 2005). Accordingly, we conclude that defendants should be charged "a flat penalty equal to the gross amount of pecuniary gain as a result of the total number of violations." Id.; see Haligiannis, 470 F. Supp. 2d at 386.

Defendants Constantin and Windham are jointly and severally liable for civil penalties totaling $1,158,145.00. See SEC v. Pentagon Capital Mgmt. PLC, 2012 WL 1036087, at *10 (S.D.N.Y. Mar. 28, 2012) (finding joint and several liability for civil penalties permissible); SEC v. Elliott, 2011 WL 3586454, at *19 (S.D.N.Y. Aug. 11, 2011) (imposing joint and several liability for civil penalties in amount equal to disgorgement amount). Defendant Solomon is individually liable for civil penalties of $114,500.00.

**Prejudgment Interest**

The award of prejudgment interest in securities fraud actions, though discretionary, is well-established in our circuit. See, e.g., Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO, 955 F.2d 831, 835 (2d Cir. 1992) (citing Rolf v. Blyth, Eastman Dillon & Co., 637 F.2d 77, 86-87 (2d Cir. 1980)). Specifically, the Second Circuit has held that, in light of the "remedial purpose of the [securities laws], the goal of depriving culpable defendants of their unlawful gains, and the lack of any unfairness to defendants" a court may order prejudgment interest "for the entire period from the time of defendants' unlawful gains to the entry of judgment." First Jersey Sec., 101 F.3d at 1477.

In this case, that period runs from March 18, 2009 to the present for defendants Constantin and Windham; from October 17, 2008 to the present for defendant Solomon; from September 29, 2008 to the present for relief defendant Constantin Resource; and from September 8, 2008 to the present for relief defendant DAC. (See Pl. Suppl. Mem. 15).[3]

---

[3] We note, however, that the SEC's calculations of prejudgment interest, on which we rely, assume an end date of March 31, 2013. (Pl. Suppl. Mem. 2, 15 & Exs. 202, 203, 204, 205).

10

We apply the Internal Revenue Code's statutory interest rate. (Id. at 2, 15); see First Jersey Sec., 101 F.3d at 1476. Constantin and Windham are jointly and severally liable for a total of $176,577.85 in prejudgment interest. Of this total, Constantin Resource is jointly and severally liable with them for not more than $118,485.87 and DAC is jointly and severally liable with them for not more than $82,921.71.[4] (Id. at Exs. 202, 203, 204, 205). Solomon is individually liable for $20,420.10 in prejudgment interest.

## CONCLUSION

As outlined above, defendant Solomon is individually liable (1) to disgorge $114,500.00, (2) to pay civil penalties of $114,500.00, and (3) to pay prejudgment interest of $20,420.10. Defendants Constantin and Windham are jointly and severally liable (1) to disgorge $1,158,145.00, (2) to pay civil penalties of $1,158,145.00, and (3) to pay prejudgment interest of $176,577.85. Relief defendant Constantin Resource is jointly and severally liable for $643,000.00 of the $1,158,145.00 for which defendants Constantin and Windham are also liable in disgorgement. Relief defendant Constantin Resource is also

---

[4] The exact amounts of prejudgment interest owed by each relief defendant will depend on the amounts disgorged by each of them.

11

jointly and severally liable with Constantin and Windham for $118,485.87 of the $176,577.85 in prejudgment interest for which Constantin and Windham are liable. Relief defendant DAC is (1) jointly and severally liable for $450,000.00 of the $1,158,145.00 in disgorgement for which Constantin and Windham are liable, and (2) is jointly and severally liable for $82,921.71 of the $176,577.85 in prejudgment interest for which Constantin and Windham are liable.

Plaintiff is to submit a proposed judgment forthwith on notice to defendants.

DATED:   New York, New York
         April 24, 2013

                                        _____
                                        MICHAEL H. DOLINGER
                                        UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Memorandum and Order have been sent today to:

Preethi Krishnamurthy, Esq.
George S. Canellos, Esq.
Barry Antoine Kamar, Esq.
Wendy Beth Tepperman, Esq.
U.S. Securities and Exchange Commission
Three World Financial Center
New York, NY 10281

James Kousouros, Esq.
Law Office of James Kousouros, Esq.
260 Madison Avenue, 22 Floor
New York, NY 10016

Mr. Brian Solomon
bsolomon@solomonkeegan.com